<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **CARLA LAMBERT,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**JARIWALA & CO., LLC, d/b/a J & CO. HOTELS GROUP,** *et al.*,<br><br>Defendants. | Civil Action No. 18-17295 (ZNQ) (DEA)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon separate Motions for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The first Motion for Summary Judgment ("Plaintiffs' Motion", ECF No. 117) was filed by Plaintiff Carla Lambert ("Named Plaintiff" or "Lambert") on behalf of herself and all others similarly situated (collectively, "Plaintiffs"). The second Motion for Summary Judgment ("Jariwala Motion", ECF No. 128) was filed by Defendants G Matss, LLC, RHR 1211, LLC, Shree AG Hospitality, LLC, d/b/a Boardwalk Seaport Inn, C Z Gabheraj, LLC, CGabheraj LLC, Raj Jariwala, Gaurang Jariwala, a/k/a Greg Jariwala, Abhishek Jariwala, a/k/a Rex Jariwala, Ram Pal ("Pal"), and Ahmed Al Haddad ("Al Haddad") (collectively, "Defendants").

Plaintiffs filed a Brief in Support of their Motion ("Plaintiffs' Moving Br.", ECF No. 117-3) and a Statement of Material Facts Not in Dispute ("Plaintiffs' SMFND", ECF No. 117-2). Defendants filed a Brief in Opposition to Lambert's Motion ("Jariwala Cross Mot. and Opp'n",

ECF No. 123), along with their Response to Plaintiffs' Statement of Material Facts ("Jariwala Counter SMFND", ECF No. 123). Plaintiffs filed a Reply in response to Defendants' Brief in Opposition ("Plaintiffs' Reply", ECF No. 129).

Similarly, Defendants filed a Brief in Support of their Cross Motion for Summary Judgment ("Jariwala Cross Mot. and Opp'n") and a Statement of Non-Disputed Facts ("Jariwala SMFND", ECF No. 123). Plaintiffs filed a Brief in Opposition to Jariwala's Motion ("Plaintiffs' Opp'n", ECF No. 129) along with a Reply Statement of Material Facts.

The Court will also address the Report and Recommendation submitted by the Honorable Douglas E. Arpert, U.S.M.J. (the "Magistrate Judge") ("Report and Recommendation", ECF No. 130) and the Motion for Default Judgment as to Pal and Al Haddad filed by Plaintiffs (the "Mot. Def. Judg.", ECF No. 133).

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will adopt the Magistrate Judge's Report and Recommendation (ECF No. 130) and GRANT Defendants' Motion to Dismiss (ECF No. 112), GRANT Plaintiffs' Motion for Default Judgment (ECF No. 133), DENY Defendants' Cross Motion for Summary Judgment (ECF No. 123), and GRANT IN PART and DENY IN PART Plaintiffs' Motion for Summary Judgment (ECF No. 117).

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    THE PARTIES

Named Plaintiff filed this action on behalf of herself and all others similarly situated alleging that Defendants failed to provide overtime compensation in accordance with the Fair

Labor Standards Act ("FLSA").  The individual defendants owned, operated, and/or managed the New Jersey businesses where Plaintiffs were employed.

### B.    PROCEDURAL HISTORY

This action was commenced on December 17, 2018, when Plaintiff filed her Complaint. (ECF No. 1.)  On March 22, 2019, Plaintiff filed a Motion for Conditional Certification and Court-Authorized Notice, asking the Court—among other procedural requests—to enter an order conditionally certifying this case as a FLSA collective action under 29 U.S.C. § 216(b).  (ECF No. 35.) The Court granted her motion.  (ECF No. 53).  On November 26, 2019, Plaintiffs filed an Amended Complaint in which they repeated their claims for unpaid overtime pursuant to the FLSA.  (ECF No. 58.)  On September 11, 2021, Defendants filed a Motion to Dismiss which sought to dismiss with prejudice the claims of opt-in plaintiffs Ashley Kullberg, Robin Hazen, Jessica Rasmussen, and Ricardo Sindoni pursuant to Fed. R. Civ. P. 37(b)(2)(v) and 41(b) for failure to comply with discovery.  (ECF No. 112.)  That Motion was unopposed.  The Magistrate Judge issued a Report and Recommendation that recommended it be granted.  (ECF No. 130.)  On October 1, 2021, Plaintiffs filed their Motion for Summary Judgment against Defendants (ECF No. 117); Defendants opposed their motion and filed a Cross Motion for Summary Judgment on November 1, 2021 (ECF No. 123).  On May 20, 2022, Plaintiffs filed a Motion for Default Judgment as to Defendants Pal and Al Haddad.

### I.    Undisputed Facts

The Court has found the following facts to be relevant and undisputed.

Rex Jariwala ("Rex") and Gaurang Jariwala ("Gaurang") are members/owners of G Matss LLC, which operated an Econo Lodge motel, located in Seaside Heights, New Jersey.  (Lambert's SMFND ¶ 1.)  Rex and Gaurang are also members/owners of RHR 1211 LLC which operated Palm

Villa motel, located in Seaside Heights, New Jersey. (*Id.* ¶ 2.) Rex was part of the management team for these establishments. (*Id.* ¶ 3.)

Raj Jariwala ("Raj") and Hemang Jariwala ("Hemang") are members of Shree AG Hospitality LLC, CGabheraj LLC, and CZ Gabheraj LLC, which all operated inns or motels in Seaside Heights, New Jersey. (*Id.* ¶¶ 4–6.)

Named Plaintiff was employed by the Jariwala family and primarily worked at the motels that were operated by the aforementioned LLC's. (*Id.* ¶ 18.) Opt-in Plaintiffs Ayman Abou Mohamed, Jermaine McEachern ("McEachern"), Samuel Gerve ("Gerve"), and Terrance Williams ("Williams") also worked for the defendants. (*Id.* ¶¶ 19–24.) Lambert, much like her opt-in plaintiff counterparts, were paid on an hourly basis and regularly worked more than 40 hours per week.[1] (*Id.* ¶¶ 28–29.)

## II.    <u>JURISDICTION</u>

The Court has subject matter jurisdiction over Plaintiffs' FLSA claim under 28 U.S.C. § 1331.

## III.    <u>REPORT AND RECOMMENDATION</u>

On April 28, 2022, the Magistrate Judge submitted his Report and Recommendation with respect to Defendants' Motion to Dismiss. (ECF No. 130.) When a Magistrate Judge seeks to dismiss a claim either on motion or *sua sponte*, the Magistrate Judge submits a Report and Recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2). "Within 14 days . . . a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); L. Civ. R. 72.1(c)(2). The district court must make a de novo determination of those portions of the Magistrate Judge's Report and Recommendation to which a litigant has filed objections. 28 U.S.C. § 636(b)(1)(C);

---

[1] Defendants failed to make clear any dispute with respect to this material fact set forth in Plaintiffs' SMFND. Accordingly, the Court will deem this fact undisputed for purposes of the pending motion. *See* L. Civ. R. 56.1(a).

Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2); *see also State Farm Indem. v. Fornaro*, 227 F. Supp. 2d 229, 231 (D.N.J. 2002). The district court may then "accept, reject or modify the recommended disposition . . . ." Fed. R. Civ. P. 72(b)(3). Unlike an Opinion and Order issued by a Magistrate Judge on a non-dispositive matter, a Report and Recommendation does not have force of law unless and until the district court enters an order accepting or rejecting it. *United Steelworkers of Am. v. N.J. Zinc Co.*, 828 F.2d 1001, 1005 (3d Cir. 1987).

Shortly after Named Plaintiff filed this action, opt-in Plaintiffs Ashley Kullberg (ECF No. 4-1), Ricardo Sindoni, Jessica Rasmussen, and Robin L. Hazen, joined this action (ECF No. 86-1). Defendants served Plaintiffs' counsel with written discovery requests consisting of interrogatories and requests for the production of documents on February 1, 2021. (ECF No. 114-1.) After a dispute as to whether Defendants had properly directed the interrogatories to the opt-in Plaintiffs, Plaintiffs' counsel agreed to provide responses for all opt-in Plaintiffs. (*See* ECF No. 114-2.) Opt-in Plaintiffs Kullberg, Robin, Rasmussen, and Sindoni, however, did not provide their responses. Based on the record, it appears that these opt-in Plaintiffs simply did not respond to attempts by their counsel to reach them. (*See* ECF No. 114-3) (Plaintiffs' counsel advising defense counsel that he has "not heard from the Opt-in Plaintiffs who have not provided discovery responses.") Fact discovery subsequently closed, the deadline having expired on August 31, 2021.

Despite ample opportunity, opt-in Plaintiffs Kullberg, Robin, Rasmussen, and Sindoni have not provided answers to the interrogatories served by Defendants. They have not responded to attempts by their counsel to obtain the responses. Additionally, they have not opposed Defendants' Motion to Dismiss. In all of these respects, it appears these Plaintiffs have abandoned their claims.

As such, the Magistrate Judge recommends that the Court grant Defendants' Motion to Dismiss these opt-in plaintiffs pursuant to Fed. R. Civ. P. 41(b), which instructs that a district court may dismiss a plaintiff's case "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of the court." *Brown v. Smith*, Civ. No. 20-8463, 2021 WL 2390077, at *1 (D.N.J. June 11, 2021). In his recommendation, the Magistrate Judge notes that when a court is asked to sanction a party by depriving that party of the right to proceed with or defend against a claim, the court applies the analysis established in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir.1984). The *Poulis* factors are as follows:

> (1) [t]he extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d at 868. As noted by the Magistrate Judge, communications between the parties show that the opt-in plaintiffs are personally responsible for the failure to prosecute their claims, as they have not responded to their own counsel's attempts to obtain their discovery responses. The failure by these Plaintiffs to participate in discovery is certainly prejudicial to Defendants, as it affects Defendants' ability to defend this case. The dilatoriness of these Plaintiffs is evidenced by their continued non-action as to the discovery requests as well as to Defendants' Motion to Dismiss. In short, the Court agrees with the Magistrate Judge's recommendation that the *Poulis* factors militate in favor of dismissing with prejudice the claims of Plaintiffs Kullberg, Robin, Rasmussen, and Sindoni. The Court will therefore grant Defendants' Motion to Dismiss.

## IV.   <u>MOTION FOR DEFAULT JUDGMENT</u>

Some of the defendants have also had difficulties with respect to complying with discovery obligations. On September 10, 2021, Plaintiffs filed a Motion for Sanctions pursuant to Fed. R.

Civ. P. 37(b)(2). (ECF No. 111.) On April 29, 2022, the Court granted in part Plaintiff's Motion for Sanctions, striking the answers of Defendants Pal and Al Haddad ("Defaulting Defendants"), and further ordered the Clerk to enter default against them. ("Default Order", ECF No. 131.) The same day that the Default Order was issued, the Clerk entered default as to the Defaulting Defendants. On May 20, 2020, Plaintiffs filed a Motion for Default Judgment as to Defaulting Defendants, which is unopposed. (ECF No. 133.) Due to defense counsel's inability to locate Defaulting Defendants, counsel sought leave to withdraw as their counsel, which was granted by the Court on August 25, 2022. ("Withdrawal Order", ECF No. 135.) The Defaulting Defendants were given 21 days from the entry of the Withdrawal Order to obtain new counsel. (*Id.*) Unsurprisingly, they have neither obtained new counsel nor communicated with the Court, their co-defendants, or their adversaries.

Pursuant to the Federal Rules of Civil Procedure, once the clerk of court has entered a default, the party seeking the default may apply to the court for entry of a default judgment. *See* Fed. R Civ. 55(b)(2); *Fehlhaber v. Indian Trials, Inc.*, 425 F.2d 715, 716 (3d Cir. 1970) (granting default judgment against a third-party defendant who did not file answers). Before entering a default judgment, a court must consider a number of factors. The Third Circuit has condensed these factors into three main issues: "(i) whether the plaintiff will be prejudiced if the default is denied, (ii) whether the defendant has a litigable defense; and (iii) whether the default was the product of defendant's culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Once a default judgment has been entered, the well-pled, factual allegations of the complaint are accepted as true and treated as though they were established by proof. *See U.S. ex rel. Motley v. Rundle*, 340 F. Supp. 807, 809 (E.D. Pa. 1972) (citing *Thomson v. Wooster*, 114 U.S. 104, 114 (1884)). While these well-pled allegations are admitted and accepted, "the Court need

not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *Broadcast Music, Inc. v. Spring Mountain Area Bavarian Resort, Ltd*., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

The above-recited three *Chamberlain* factors substantially overlap with the *Poulis* factors that were already relied upon by the Court in its decision to enter default.  (Default Order at 8–10.) Thus, this Court has already concluded that Defaulting Defendants' delay is due to their culpable conduct, and that Plaintiffs have been prejudiced because Plaintiffs are unable to move beyond the discovery phase of litigation.  *Id.*; *see also Hunt-Ruble v. Lord, Worrell & Richter, Inc.*, Civ. No. 10-4520, 2012 WL 4120477, at *1 (D.N.J. Sep. 18, 2012) (citing the Magistrate Judge's reliance on *Poulis* in her Report and Recommendation to enter default to support the granting of Plaintiffs' Motion for Default Judgment).  Moreover, Defaulting Defendants' failure to provide discovery and their complete disregard for the Court's orders to comply with discovery requests have already resulted in extra costs to the parties, repeated delays, and additional motion practice.  The Court therefore concludes that if default is denied, Plaintiffs will be further prejudiced by Defaulting Defendants' continued pattern of refusing to participate in this suit.  *Id.*  Without default judgment, it appears very likely that Plaintiffs claims will never be adjudicated.  *Id.*  Lastly, in the Default Order, the Court concluded that it "need not address the [litigable defense] factor when 'the overwhelming balance of [*Poulis*] factors weigh in favor' of striking the noncompliant party's pleading and entering default against him."  (Default Order at 10.)  Now, however, Defaulting Defendants' Answers have been stricken and the allegations of the Complaint are deemed admitted.  *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of

damages—is deemed admitted if a responsive pleading is required and the allegation is not denied."). Thus, the Court concludes that Defaulting Defendants do not have a litigable defense.

Further, the court may enter a default judgment without conducting a hearing upon a showing of specified damages by Plaintiff. *Baymont Franchise Sys. v. R S Hosp., Ltd. Liab. Co.*, Civ. No. 15-04067, 2018 WL 3410031, at *2 (D.N.J. July 12, 2018) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). With regard to damages, Plaintiffs each submitted economic calculations specifically accounting for how much they were underpaid. They seek the amount of underpayment plus liquidated damages, attorneys' fees, and costs to which they are entitled under the FLSA. *Hunt-Ruble*, 2012 WL 4120477, at *2 (finding that declarations submitted by the plaintiffs that calculated the amount of underpayment plus that same amount in liquidated damages was sufficient to grant default judgment). Accordingly, the Court will GRANT Plaintiffs' Motion for Default Judgment as to Defendants Pal and Al Haddad.[2]

As a final housekeeping matter, the Court notes that the Default Order also granted Plaintiffs' request for fees and costs as to Defaulting Defendants and awarded Plaintiffs their reasonable expenses incurred in making this motion, including attorney's fees. Default Order at 11. The Order invited a fee/cost application, which Plaintiffs submitted. (ECF No. 132.) No opposition was filed. The Court has reviewed that application and finds that Plaintiffs' fees of $9,058.12 and costs of $129.46 are both reasonable and appropriate. Defendants Ram Pal and Ahmed will therefore be ordered to pay them within 21 days.

---

[2] Specifically, the Court will grant Plaintiffs' Motion for Default Judgment on behalf of Named Plaintiff Carla Lambert and Opt-in Plaintiffs Ayman About Mohamed, Samuel Gerve, Ariel Long, Jermaine McEachern, Omar Mohamed, and Terrance Williams. Insofar as the Court has decided to dismiss the claims brought by Gage Kullberg, the portion of the Motion for Default Judgment seeking relief on his behalf will be DENIED AS MOOT.

## V.    <u>LEGAL STANDARD</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id*. (quoting *Anderson*, 477 U.S. at 250). "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id*. (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## VI.    <u>DISCUSSION</u>

Plaintiffs are attempting to hold Defendants jointly liable for underpayment of wages as non-exempt employees under the FLSA.  Specifically, Plaintiffs claim that they worked more than 40 hours in workweeks but were not paid overtime compensation at a rate of one and one-half times their regular rates ("overtime pay").  (Plaintiffs' Moving Br. at 1.)

### A.    FLSA

#### 1.    Statute of Limitations

As a general rule, a two-year statute of limitations applies to FLSA claims.  29 U.S.C. § 255(a).  The statute of limitations is extended to three years after the cause of action accrues if the employer willfully violated the FLSA.  *Id*.  For the purposes of the FLSA, a cause of action accrues "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21(b).  "A willful violation occurs when 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"  *Albanese v. Cnty. of Bergen*, 991 F. Supp. 410, 425 (D.N.J. 1997) (quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988)).

More importantly, in a FLSA collective action, unlike a Rule 23 class action, the filing of plaintiffs' Complaint does not toll the statute of limitations for all potential members of the collective.  *Viscomi v. Clubhouse Diner*, Civ. No. 13-4720, 2016 WL 1255713, at *6 (E.D. Pa. Mar. 31, 2016).  The statute of limitations continues to run for potential members until they affirmatively opt in.  *Symczyk v. Genesis HealthCare Corp*., 656 F.3d 189, 200 (3d Cir. 2011); *see also In re Chickie's & Pete's Wage & Hour Litig*., Civ. No. 12-cv-6820, 2013 WL 2434611, at *3 (E.D. Pa. June 5, 2013) ("Once the signed consents are filed with the Court, they do not 'relate back' to the filing date of the Consolidated Complaint.").

In their Cross Motion for Summary Judgment and Opposition, Defendants argue that opt-in plaintiffs Long, Omar Mohamed, and Ayman Mohamed should be dismissed from this action with prejudice because their claims are time-barred.  (Jariwala Cross Mot. and Opp'n at 19.) Defendants argue that "the statute of limitations on a FLSA action is either two years or, if a plaintiff alleges a willful violation, three years."  (*Id.*)  Here, Long's last paycheck issued from any defendant was April 6, 2017, and more than three years later, on October 30, 2020, she filed her notice of consent to join.  (*Id.*)  Opt-in Plaintiff Ayman Mohamed's last paycheck issued from any defendant was on August 25, 2016, and more than four years later, on December 23, 2020, he filed his notice of consent to join.  (*Id.*)  Lastly, Omar Mohamed's last paycheck issued from any defendant was on June 14, 2018, and more than two years later, on October 30, 2020, he filed his notice of consent to join.  (*Id.* at 20.)  As such, these Plaintiffs' claims should be time-barred and dismissed with prejudice.

In their Reply, Plaintiffs argue that opt-in plaintiffs Long, Omar Mohamed, and Ayman Mohamed should not be dismissed because Defendants' reference to the statute of limitations does not take into consideration a stay, which included tolling, that was not lifted until January 4, 2021. (Lambert Reply at 14.)  On October 8, 2019, the Parties filed an Application and Proposed Order for Clerk's Order to extend time to answer as to Defendants, which included the Parties' already existing agreement to stay proceedings and to toll statutes of limitations for the duration of the stay.  (*Id.* at 18; "Application", ECF No. 54).  This Application was granted by the Court on October 9, 2019, (ECF No. 56) and was lifted on January 4, 2021 (ECF No. 92).  With the approximately 14 months of tolling, the 3-year lookback period for Opt-in Plaintiff Ariel Long would start on or about August 5, 2016.[3]  (Lambert Reply at 18.)  Plaintiffs also dispute whether

---

[3] Three years prior to October 30, 2020 is October 30, 2017.  Adding another 1 year and 2 months provides for August 5, 2016.  (Lambert Reply at 18 n. 43.)

Omar Mohamed's last paycheck issued from any Defendant was on June 14, 2018, and whether Ayman Mohamed's last paycheck issued from any defendant was on August 25, 2016, because "it is unknown whether all documents were produced, as all Defendants never fully responded to discovery and/or provided Rule 30(b)(6) deposition dates." (*Id.* at 18–19.)

Plaintiffs' argument that it is unknown whether all documents were produced, as all Defendants never fully responded to discovery and/or provided Rule 30(b)(6) deposition dates is persuasive and accurate. The Court has already held that at least two Defendants—Al Haddad and Pal—have been uncooperative with discovery thus far. It is plausible that a more complete discovery production may have evinced payroll records passed the dates which Defendants cite as the last date of payment for these Plaintiffs, rendering their statute of limitations argument null and void. Defendants' lack of cooperation during the discovery period should not prohibit Plaintiffs from raising a genuine issue of material fact of their last dates of payment. This is especially the case here, where Defendants deprived them of the very discovery to which Plaintiffs were entitled and to which Defendants now seek Summary Judgment. Accordingly, a genuine issue of material fact remains as to whether Long, Omar Mohamed, and Ayman Mohamed's claims are time-barred by the FLSA's statute of limitations. Summary judgment with respect to Defendants' statute of limitations defense is therefore inappropriate.

### 2.    Exemption and Overtime Wages

Plaintiffs next argue that they were not exempt from the FLSA overtime protections. (Plaintiffs' Moving Br. at 8.) Plaintiffs assert that they were paid on an hourly basis and were not paid one and one-half times the employer's regular wage for hours worked in excess of 40 hours per week. (*Id.* at 8–9.)

Defendants simply argue that Rex testified that managers "are paid on a salary basis" and relied on this to assert that a factual dispute exists so as to prevent summary judgment. (Jariwala Cross Mot. and Opp'n at 18.) Defendants also note that any discrepancies in pay amounts may be attributed to nondiscretionary bonuses and incentive payments. (*Id.*)

The FLSA mandates that if an employee works more than forty hours per week, he or she must be compensated for overtime hours at a rate at least one-and-one-half times the employee's regular rate. 29 U.S.C. § 207(a)(1). The FLSA exempts from its overtime provisions "any 'employee in a bona fide executive, administrative, or professional capacity.'" *Soehnle v. Hess Corp.*, 399 F. App'x 749, 750 n.1 (3d Cir. 2010 (quoting 29 U.S.C. § 213(a)(1)). Additionally, the FLSA exempts from its overtime provisions "[e]mployees who perform a combination of exempt duties." 29 C.F.R. § 541.708.

In light of the broad remedial purpose of the FLSA, exemptions are narrowly construed against the employer. *Madison v. Resources for Human Dev., Inc*., 233 F.3d 175, 183 (3d Cir. 2000). An FLSA exemption is properly characterized as an affirmative defense. *Id.* at 180–81, 183. Thus, "[t]he burden of proof to establish that its employees come within the scope of an overtime exemption is on the employer." *Friedrich v. U.S. Computer Serv*., 974 F.2d 409, 412 (3d Cir. 1992). "[I]f the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." *Martin v. Cooper Elec. Supply Co*., 940 F.2d 896, 900 (3d Cir. 1991).

There are three categories of exemptions: executive, administrative, combination. An exempt "executive" is any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  An exempt "administrative" employee is any employee:

(1) Compensated on a salary or fee basis at a rate not less than $455 per week 8;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  Lastly, under the FLSA regulations, an employee who performs a combination of exempt duties—but who does not satisfy the primary duty requirement under any of the stand-alone exemptions—may nonetheless qualify for exempt status.  29 C.F.R. § 541.708.  "[A]n employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption" so long as the other requirements, such as the salary basis test, are met.  *Id.*

"In order for summary judgment to be granted, in their favor, Defendants must establish all the essential elements of the exemption to the extent required by the summary judgment standard" discussed above.  *In re Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig.*, Civ. No. 09-210, 2012 WL 4356762, at *11 (E.D. Pa. Sep. 24, 2012).  Here, however, Defendants, have not met their burden to establish an absence of material fact with respect to Plaintiffs being exempt from the overtime provisions of the FLSA.  Aside from Rex's general statement in his deposition that "managers are paid on a salary basis" (Pltf. Ex. K at 134:5-9), Defendants do not attempt to claim that Plaintiffs were exempt employees.  First, other than Abhishek Jariwala's testimony that Named Plaintiff was once a manager, Defendants do not clarify which, if any, of

the other Plaintiffs also held management positions.  (*Id.* at 30:6-12.)  Second, Defendants do not claim that any of the Plaintiffs fall under any of the aforementioned exemptions.  Lastly, even if the Court were to construe Defendants' arguments that "managers are paid on a salary basis" as to apply to all Plaintiffs, a quick review of Plaintiffs' ADP earnings details would indicate otherwise because none of the Plaintiffs were compensated on a salary basis.  This inference became obvious via the Plaintiffs' earning statements that shows the overwhelming regularity that their income was the dollar rate at which they were paid multiplied by the hours they worked.  (*See generally*, Pltf. Ex. A).  Moreover, Plaintiffs were paid at rates between $8.38 and $11.00 per hour, a rate significantly less than $455 per week—an essential element for all forms of exemption.  (*Id.*; *See generally,* Pltf. Ex. B.)

On the other hand, some of the Plaintiffs satisfied their burden in alleging that Defendants violated the overtime wage requirements of the FLSA.  Opt-in Plaintiffs Gerve, Omar Mohamed, Ariel Long ("Long"), Ayman Mohamed, and McEachern pled that they are not exempt employees under the FLSA because they were paid on an hourly basis and were paid less than the minimum salary threshold of $455.  These Plaintiffs also overcame any genuine dispute of material fact by submitting their ADP earning details which show that they were being paid the same hourly rate for any hours worked over 40 hours a week rather than overtime pay as required under the FLSA.  (*Id.*; *Id.*)  All of these Plaintiffs' ADP earnings details showed that they often worked over 80 hours in the span of two weeks but were only paid their base hourly wage for all of the hours worked over 40 per week.  (*Id.*; *Id.*)  On at least thirty different occasions, Long was not paid overtime pay by G Matss LLC between February 11, 2016, and March 23, 2017.  (Pltf. Ex. A at 10–14.)  On at least three different occasions, Ayman Mohamed was not paid overtime pay by RHR 1211 LLC between July 28, 2016, and August 25, 2016.  (*Id.* at 15.)  On at least six different occasions,

McEachern was not paid overtime pay by C Z Gabheraj LLC between May 18, 2017, and July 27, 2017.  (*Id*. A at 21.)  On at least twenty-seven different occasions, Omar Mohamed was not paid overtime pay by Shree AG Hospitality LLC between November 25, 2015, and July 27, 2017.  (*Id*. A at 32–38.)  Lastly, on at least one occasion, Gerve was not paid overtime pay by CGabheraj LLC on June 29, 2017.  (Pltf. Ex. B at 21.)

While the other Plaintiffs submitted their earnings details that may be indicative of FLSA overtime wage violations, they have not met their burden of asserting a claim beyond a genuine issue of material fact because based on their earnings details alone, it is unclear whether Defendants violated the FLSA.  For example, Named Plaintiff submitted ADP earnings details that indicated she worked 51 hours at a rate of $11 per hour for the time worked between May 17, 2018, and May 31, 2018.  The paycheck she received was for $561 ($11 per hour multiplied by the 51 hours worked).  The genuine issue of material fact lies in the ambiguity of this earnings statement.  If the 51 hours were all worked in the same week, she should have been paid one and one-half times her hourly wage for the 11 hours of overtime that week, which she was not.  However, if over the two week pay-period she worked 25 hours in the first week, and 26 in the second, her earnings were in compliance with the FLSA.  Opt-in Plaintiffs Terrence Williams and Gage Kullberg ran into similar issues with their earnings details.  Moreover, Opt-in Plaintiffs submitted ADP earnings records of working more than 80 hours over a two-week pay period but spread across two different companies.  For example, Williams worked 40 hours for Shree AG Hospitality LLC for the pay period ending May 3, 2018.  (Pltf. Ex. A at 53.)  For that same pay period, Williams also worked 51.65 hours for C Z Gabheraj LLC.  (*Id.* at 55.)  For both pay periods, Williams only earned his hourly wage rate.  However, although Plaintiffs asserted that Defendants acted jointly—which, if true, would mean that Williams deserved overtime pay for 11.65 hours—

the Court has not found this to be the case at this stage in the litigation.  For these reasons, the Court will DENY Defendants' Motion for Summary Judgment.  It will GRANT partial summary judgment in favor of Opt-in Plaintiffs Gerve, Omar Mohamed, Long, Ayman Mohamed, and McEachern against G Matss LLC, RHR 1211 LLC, C Z Gabheraj LLC, Shree AG Hospitality, and CGabheraj LLC and find that these Defendants are liable for violating the FLSA with respect to overtime wages in an amount to be determined at a later time.

### B.    JOINT EMPLOYERS

Plaintiffs also argue that Defendants jointly employed Plaintiffs.  Plaintiffs rely on their own deposition testimony to assert that joint employment is evident via the shared membership across the various business entities, shared marketing and office spaces, resources, and Defendants' expectations that the employees could work interchangeably between each of Defendants' hotels.  (*Id.* at 6) (citing deposition testimony of Lambert and opt-in Plaintiffs Long, A. Mohamed, O. Mohamed, and Gerve.) According to Plaintiffs, this was effectuated through the hotel's manager, Al Haddad, who was hired by his co-defendants and was responsible for "hiring, firing, compensation, overtime, picking up deposits, customer refunds, staff meetings, and training." (*Id.* at 7) (citing deposition testimony).  They argue that "Defendants operated all hotels and rental properties as a joint enterprise" as evidenced by their "shared resources and staff," e.g., the fact that "[l]aundry and supplies for all properties was primarily handled out of the Boardwalk location." (*Id.* at 7–8.)

In their Cross Motion and Opposition, Defendants argue that Plaintiffs are unable to meet their burden to prove that Defendants are joint employers.  (Jariwala Cross Mot. and Opp'n at 12.)  First, Defendants cite the concession by opt-in Plaintiff Omar Mohamed in his deposition testimony that the entities operated as separate and distinct employers insofar as "the trainings were all different at each location, with each entity having different system[s], and different individual managers handling the training." (*Id.* at 13.)  Moreover, citing their own testimony, Defendants deny that Al Haddad was the

manager of G MATTS LLC or RHR 1211 LLC and that he was the manager of all hotels, as asserted by Plaintiffs. (*Id.* at 14.) Rather, "each entity employed its own manager to run the day-to-day operations, with some of the Plaintiffs being in those positions." (*Id.* at 15.) Defendants also point to Plaintiffs' use of self-serving deposition testimony to support their own statements. (*Id.* at 14.) Lastly, they contend Plaintiffs failed to establish that the individual defendants are "employers" under the FLSA because they do not advance any argument whatsoever as to how these individuals are employers. (*Id.* at 15.)

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The applicable federal regulations also provide as a definition of an employer-employee relationship under the FLSA "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b). A "single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA]." 29 C.F.R. § 791.2(a). "A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." *In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 467 (3d Cir. 2012) ("*Rent-a-Car*").

When faced with a question requiring examination of a potential joint employment relationship under the FLSA, courts should consider:

> 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including

employee discipline; and 4) the alleged employer's actual control of
employee records, such as payroll, insurance, or taxes.

*Id.* at 469-70.  This list, however, is not exhaustive, and cannot be "blindly applied" as the sole considerations necessary to determine joint employment.  *Id*. at 470.  If a court concludes that other indicia of "significant control" are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors we have set forth.  *Id.*

The Court will deny the summary judgment sought by both parties as to Defendants' possible status as joint employers for two reasons.

First, and most importantly, the parties have adopted directly opposing factual positions that are based almost exclusively on self-serving testimony offered by their respective witnesses.  The credibility determinations that would be required to decide this issue render it inappropriate for a decision on summary judgment.  *See Lauren W. ex rel. Jean W. v DeFlaminis*, 480 F.3d 259, 271–272 (3d Cir. 2007).

Second, the Court is unconvinced that this issue has been properly briefed by the parties on summary judgment.  The facts and arguments raised appear better suited to an assessment of whether the Defendants are in fact a "single integrated enterprise" within the meaning of the Third Circuit's decision in *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001).  The Third Circuit has yet to itself apply its *Pearson* analysis in the context of an FLSA claim, but several district courts in this circuit have done so.  *See, e.g., Huang v. Sakura Mandarin, Inc.*, Civ. No. 21-3757, 2022 WL 2052646, at *3–5 (E.D. Pa. June 7, 2022); *Xiao v. Sichuan Gourmet LLC*, Civ. No. 21-482, 2022 WL 819096, at *4–5 (W.D. Pa. March 18, 2022); *Goh v. Nori O Inc.*, Civ. No. 16-2811, 2020 WL 7640518, at *8–9 (D.N.J. Dec. 23, 2020).  *See also* U.S. Department of Labor Opinion Letter No. 2222, issued June 6, 2020 ("Whether the hours an employee works for two separate corporations must be combined for overtime purposes depends on whether the employment is so interrelated that it is considered joint

employment *or, in the case of brother-sister corporations, whether they should be considered to be a single enterprise or entity.*")[4] (emphasis added.)   Accordingly, the Court will deny the summary judgment sought by both parties as to Defendants' possible status as joint employers.

## VII.   <u>CONCLUSION</u>

For the reasons stated above, the Court will adopt the Magistrate Judge's Report and Recommendation (ECF No. 130) and GRANT Defendants' Motion to Dismiss (ECF No. 112), GRANT Plaintiffs' Motion for Default Judgment (ECF No. 133), DENY Defendants' Cross Motion for Summary Judgment (ECF No. 123), and GRANT IN PART and DENY IN PART Plaintiffs' Motion for Summary Judgment (ECF No. 117).   An appropriate Order will follow.

Date: **February 10, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[4] The Court notes that, even were it to apply the *Pearson* factors *sua sponte*, it would deny the parties' crossing motions for summary judgment on this issue given the genuine issues of material fact presented.